UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TIMOTHY R. HOZA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, <br><br> Defendant. | Case No. 08-cv-620-JLR-JPD <br><br> REPORT AND RECOMMENDATION |

Plaintiff Timothy R. Hoza appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

I.   FACTS AND PROCEDURAL HISTORY

Plaintiff is a 48-year-old man and has obtained a General Equivalency Degree. Administrative Record ("AR") at 123. His past work experience includes employment as a laborer, shipping clerk, interpreter for the deaf, shipping and receiving supervisor, and assembly supervisor. AR at 76, 100-03, 120, 581-83. Plaintiff was last gainfully employed in

the summer of 2003, when he worked as a shipping clerk and earned $8,794 for the year. AR at 76, 120, 136.

On May 28, 2004, Plaintiff filed a claim for SSI payments. AR at 55. Also on May 28, 2004, he filed an application for DIB, alleging a disability onset date of June 19, 2001. AR at 55. Plaintiff asserts that he is disabled due to a combination of physical and mental impairments, including back, hip, and leg pain, gastrointestinal issues such as acid reflux, hearing loss, headaches, anxiety, depression, personality disorder, and attention-deficit disorder. AR at 51, 84-85, 112, 115, 119, 271, 583, 594-95.

The Commissioner denied Plaintiff's claim initially and on reconsideration. AR at 51, 47. Plaintiff requested a hearing which took place on February 7, 2007. AR at 577. On April 26, 2007, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on his finding that Plaintiff could perform jobs that exist in significant numbers in the national economy. AR at 28-31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, AR at 6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Hoza bears the burden of proving that he is disabled within the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work

experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

---

[1] Substantial gainful activity is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, *i.e.*, performed for profit. 20 C.F.R. § 404.1572.

then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds that the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On April 26, 2007, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant may have engaged in substantial gainful activity since June 19, 2001, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).

3. The claimant has the following severe impairments: personality disorder, learning disorder, attention-deficit disorder (ADD), depression, hip issues, and gastrointestinal issues (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and/or walk for six hours in an eight hour day, sit for six hours in an eight hour day, and do unlimited pushing and pulling. He can occasionally climb ladders, ropes, and scaffolds, and can do occasional kneeling, crouching, and crawling. He can work with a few coworkers and supervisors but not the general public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on ▮▮▮▮▮▮,[2] 1960 and was 41 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CRF 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2001 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR at 16-31.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err at step two by failing to include Plaintiff's spinal disorder, knee osteoarthritis, hearing loss, and chronic headaches as severe impairments?

2. Did the ALJ err at step four by failing to include any cognitive functional limitations in the RFC?

3. Did the ALJ err by exclusively relying on the Medical-Vocational Guidelines to find Plaintiff not disabled?

Dkt. Nos. 15 at 6, 10, 14; 19 at 3.

---

[2] Plaintiff's actual date of birth is redacted in accordance with Western District of Washington Local Rule CR 5.2(a)(1).

## VII. DISCUSSION

Based on a thorough review of the record, the Court concludes that the ALJ erred by failing to give appropriate weight to Dr. Coleman's opinions, failing to consider Plaintiff's limitations on sitting and standing in the RFC, and failing to call a Vocational Expert ("VE") to testify at the hearing.

### A. Standard of Review for Medical Evidence

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining

physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

B. The ALJ Erred by Failing to Give Appropriate Weight to Dr. Coleman's Opinions.

Plaintiff visited treating psychologist Dr. Coleman on eight occasions over the course of three years. On every visit, Dr. Coleman found that Plaintiff had mild to marked limitations in his ability to understand, remember, and follow complex (more than two step) instructions, his ability to learn new tasks, his ability to exercise judgment and make decisions, and his ability to perform routine tasks. AR at 195, 199, 279, 286, 290, 294, 298, 302. For example, on August 20, 2003, Dr. Coleman found that Plaintiff had moderate limitations in his ability to understand, remember, and follow complex instructions and his ability to perform routine tasks. AR at 302. Dr. Coleman also found that Plaintiff had marked limitations in his ability to exercise judgment and make decisions. *Id.* On October 14, 2003, Dr. Coleman opined that Plaintiff had moderate limitations in his ability to understand, remember, and follow complex instructions and his ability to perform routine tasks, and marked limitations in his ability to exercise judgment and make decisions. AR at 298. On January 13, 2004, Dr. Coleman found that Plaintiff had moderate limitations in his ability to understand, remember, and follow

complex instructions and his ability to learn new tasks. AR at 294. Dr. Coleman also found that Plaintiff had marked limitations in his ability to exercise judgment and make decisions. *Id.* On March 23, 2004, Dr. Coleman found that Plaintiff had moderate limitations in his ability to understand, remember, and follow complex instructions, his ability to learn new tasks, and his ability to perform routine tasks. AR at 195. Dr. Coleman again found that Plaintiff had marked limitations in his ability to exercise judgment and make decisions. *Id.* On July 6, 2004, Dr. Coleman opined that Plaintiff had moderate limitations in his ability to exercise judgment and make decisions. AR at 199. On June 17, 2005, Dr. Coleman found that Plaintiff had moderate limitations in his ability to learn new tasks and his ability to exercise judgment and make decisions. AR at 290. On November 22, 2005, Dr. Coleman found that Plaintiff had moderate limitations in his ability exercise judgment and make decisions, and noted that Plaintiff was "[n]ot able to handle 2 classes per [quarter]." AR at 286. On December 28, 2006, Dr. Coleman found that Plaintiff had moderate limitations in his ability to exercise judgment and make decisions, and noted that Plaintiff "[h]as limited ability to cope with tasks." AR at 279. In addition, Dr. Coleman consistently diagnosed Plaintiff with learning disorder and attention-deficit disorder. AR at 194, 198, 278, 285, 289, 293, 297, 301.

The ALJ gave little weight to Dr. Coleman's opinions, ruling only that "[t]he bulk of the record does not support the very severe assessments made by Dr. Coleman. Claimant . . . was able to persist at school." AR at 23. The ALJ also found that Plaintiff's mental limitations "were primarily social in nature . . . ." AR at 29. While the ALJ found at step two that Plaintiff had severe impairments of learning disorder and attention-deficit disorder, the ALJ did not include any cognitive limitations in the RFC. AR at 16, 17.

However, Dr. Coleman is the psychologist who evaluated Plaintiff most often and over the longest period of time. His opinions and diagnoses were consistent and included in eight different psychological evaluations. Moreover, it is unclear how Plaintiff's persistence in school contradicts or undermines Dr. Coleman's opinions regarding Plaintiff's cognitive

REPORT AND RECOMMENDATION
PAGE - 9

limitations. Indeed, the fact that Plaintiff is persistent in school is not inconsistent with Dr. Coleman's findings regarding Plaintiff's moderate to marked cognitive limitations. Moreover, Plaintiff's persistence in school does not foreclose the possibility that his cognitive limitations nonetheless diminish the number of unskilled jobs available to him.

The ALJ rejected the uncontradicted medical opinion of a long-term treating physician without providing clear and convincing reasons for doing so. Indeed, the ALJ simply rejected Dr. Coleman's opinions in a conclusory manner. The ALJ erred in doing so. The ALJ is directed to reevaluate the medical evidence in light of the proper standards and to consider Plaintiff's cognitive limitations in the RFC. If this means that the ALJ needs assistance to complete the medical review and to clear up any ambiguities in the record by calling a medical expert, the ALJ should do so.

    C.    <u>The ALJ Erred by Failing to Consider Plaintiff's Limitations on Sitting and Standing in the RFC</u>.

Plaintiff's medical records reflect that examining physician Dr. Heilbrunn examined Plaintiff on November 18, 2004 and diagnosed him with lumbar pain and strain/degenerative joint disease and history of spina bifida. AR at 210. Dr. Heilbrunn also diagnosed Plaintiff with bilateral knee osteoarthritis. *Id.* Dr. Heilbrunn stated that Plaintiff could sit for at least 30 minutes uninterrupted, and for a cumulative length of time of 5-6 hours in an 8-hour workday with periods for postural repositioning; stand or walk for at least 20 minutes uninterrupted, and for a cumulative length of time of 5-6 hours in an 8-hour workday; frequently lift and carry 5-10 pounds; negotiate 20-30 steps; and negotiate uneven terrain and an inclined plain. *Id.*

The ALJ stated only that he gives Dr. Heilbrunn's overall medical opinion regarding Plaintiff "some weight," but that "most of [Dr. Heilbrunn's] findings are not supported by objective evidence. The bulk of the record supports that claimant can do light exertional work." AR at 19-20. The ALJ found that Plaintiff's spinal disorder and knee osteoarthritis

were non-severe, AR at 16, and he did not include Plaintiff's limitations on sitting and standing during the workday in the RFC, AR at 17.

However, Dr. Heilbrunn performed a comprehensive disability examination of Plaintiff and his medical opinion regarding Plaintiff's limitations on sitting and standing is not inconsistent with other medical evidence in the record. Indeed, the ALJ did not specify any objective evidence that undercuts or contradicts Dr. Heilbrunn's medical opinion regarding Plaintiff's limitations on sitting and standing, nor did he demonstrate how the "bulk of the record" contradicts Dr. Heilbrunn's opinion concerning Plaintiff's limitations on sitting and standing.

The ALJ erred by rejecting the uncontradicted medical opinion of an examining physician without providing clear and convincing reasons for doing so. Moreover, even assuming that Plaintiff's spinal disorder and knee osteoarthritis are non-severe, the ALJ erred by failing to consider Plaintiff's limitations on sitting and standing in the RFC. The ALJ is directed to reevaluate the medical evidence in light of the proper standards set forth above and to consider Plaintiff's limitations on sitting and standing in the RFC. If this means that the ALJ needs assistance to complete the medical review and to clear up any ambiguities in the record by calling a medical expert, the ALJ should do so.

D. The ALJ Erred By Failing to Call a VE at the Hearing.

1. Plaintiff's Cognitive Limitations

The ALJ erred by failing to call a VE at the hearing for two reasons. First, because of Plaintiff's cognitive limitations, the ALJ should not have relied upon the Medical-Vocational Guidelines ("the Guidelines"), and instead should have obtained VE testimony regarding whether Plaintiff has the capacity to perform a specific job that exists in significant numbers in the national economy.

When a claimant has established he suffers from a severe impairment that prevents him from performing any work he has done in the past, the claimant has made a *prima facie*

REPORT AND RECOMMENDATION
PAGE - 11

showing of disability. "At this point -- step five -- the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in 'significant numbers' in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1560(b)(3)). Ordinarily, the Commissioner can meet this burden in one of two ways: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.

The Guidelines are a matrix system used to determine whether substantial gainful work exists for claimants with substantially uniform levels of impairment. *Tackett*, 180 F.3d at 1101. The Guidelines categorize work by exertional level (sedentary, light, or medium) and contain various factors relevant to a claimant's ability to find work, including age, education, and work experience. When a claimant's qualifications correspond to job requirements, the Guidelines direct a conclusion of whether work exists that the claimant could perform, and if such work exists, the claimant is considered not disabled.

Because the Guidelines categorize jobs by their physical exertion requirement, their use is appropriate when it is established that a claimant suffers from exertional impairments. Thus, when a plaintiff suffers from significant *non*-exertional impairments, resort to the Guidelines is inappropriate, and the ALJ may not mechanically apply them to direct a finding of disability. *See Widmark v. Barnhart*, 454 F.3d 1063, 1069-70 (9th Cir. 2006) ("[T]he ALJ may rely on the Guidelines alone 'only when the [Guidelines] accurately and completely describe the claimant's abilities and limitations.'") (quoting *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)); *Bruton v. Massanari*, 268 F.3d 824, 827 (9th Cir. 2001) (same). Instead, the ALJ must use the principles in the appropriate sections of the regulations to determine whether the claimant is disabled. *Tackett*, 180 F.3d at 1101-02; SSR 85-15, 1985 WL 56857, at *1. Furthermore, when an ALJ uses the Guidelines as a framework to evaluate non-exertional limitations not specifically contemplated by the Guidelines, he must call upon a VE. *Tackett*,

180 F.3d at 1102. In such a scenario, the ALJ must provide the VE with an accurate and detailed description of the claimant's impairments, as reflected by the medical evidence of record. *Id.* at 1101.[3]

Here, the ALJ failed to call a VE at step five despite the opinions of Dr. Coleman and the ALJ's finding that Plaintiff suffered from the severe non-exertional impairments of learning disorder and attention-deficit disorder. AR at 16. Instead, the ALJ only concluded on his own that Plaintiff's non-exertional limitations do not significant erode the occupational base of unskilled work. AR at 31. The ALJ's failure to call a VE in light of Plaintiff's severe non-exertional limitations constitutes reversible error. *See Tackett*, 180 F.3d at 1102. On remand, the ALJ must require a VE to provide testimony concerning the full vocational impact of all Plaintiff's impairments, including his cognitive and social limitations. The VE should also testify as to the availability of jobs in the national economy, if any, for which Plaintiff is qualified.

### 2. Plaintiff's Limitations on Sitting and Standing

The ALJ erred by failing to call a VE for a second reason: Dr. Heilbrunn's opinion that Plaintiff must alternate his position between sitting and standing and/or walking throughout an 8-hour workday may significantly diminish the number of light, unskilled and sedentary jobs that would be available to Plaintiff, as such jobs by their nature often require sitting or standing for long periods of time. SSR 83-12 provides that unskilled types of jobs "are particularly structured so that a person cannot ordinarily sit or stand at will." SSR 83-12, 1983 WL 31253, at *4. Accordingly, "[i]n cases of unusual limitation of ability to sit or stand, a VS [Vocational Specialist] should be consulted to clarify the implications for the occupational base." *Id.* In

---

[3] The Commissioner may meet this step five burden by propounding to the VE a hypothetical question that, at the very least, adequately reflects *all* the claimant's impairments and limitations supported by substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989). Using the VE, the ALJ must determine whether Plaintiff is capable of performing any unskilled work. SSR 85-15.

REPORT AND RECOMMENDATION
PAGE - 13

addition, SSR 96-9p provides that if breaks and a lunch period cannot accommodate an individual's need to alternate sitting and standing (and, possibly, walking) periodically, "the occupational base for a full range of unskilled sedentary work will be eroded." SSR 96-9p, 1996 WL 374185, at *7. Therefore, the RFC assessment at step four "must be specific as to the frequency of the individual's need to alternate sitting and standing." *Id.* In addition, as with SSR 83-12, SSR 96-9p provides that "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." *Id.*

Here, the ALJ failed to evaluate Dr. Heilbrunn's medical opinion under the proper standards for medical evidence and failed to consider Plaintiff's limitations on sitting and standing in the RFC. Moreover, the ALJ erred by failing to call a VE at the hearing to clarify the implications of Plaintiff's limitations on sitting and standing on his occupational base. Accordingly, on remand the ALJ is directed to reevaluate the medical evidence in light of the proper standards, to consider Plaintiff's limitations on sitting and standing in the RFC, and to obtain VE testimony to determine the vocational implications of Plaintiff's limitations on sitting and standing. *See* SSR 83-12; SSR 96-9p.

E. <u>The ALJ Did Not Err in Finding Plaintiff's Hearing Loss to be Non-Severe</u>.

Plaintiff's medical records reflect that Dr. Heilbrunn noted that Plaintiff has "no auditory . . . work place limitations." AR at 210. Dr. Harris examined Plaintiff on August 2, 2005 and found that Plaintiff has "hearing that could be borderline, especially in background noise situations, and has found it hard to understand speech in his classrooms . . . ." AR at 248. Dr. Harris does not indicate any work or other limitations based on Plaintiff's hearing loss, only noting that since a hearing aid is available to Plaintiff at school, it should be provided to him. *Id.* Plaintiff testified that he has full hearing in his left ear. AR at 598-99.

Because there is no evidence of any work limitations in the record, and because a hearing aid can ameliorate Plaintiff's hearing loss, the ALJ properly found Plaintiff's hearing

impairment to be non-severe. *See Warre v. Commissioner*, 439 F.3d 1001, 1006 (9th Cir. 2006) (holding that impairments that can be controlled effectively with treatment or medication are not disabling). While Plaintiff testified that a roommate's dog ate his previous hearing aid many years ago and that he cannot now afford a new one, AR at 73, he is able to use a hearing aid at school and he testified that the Washington Division of Vocational Rehabilitation "is probably going to get me one." AR at 598.

### F. The ALJ Did Not Err in Finding Plaintiff's Headaches to be Non-Severe.

Plaintiff's medical records regarding headaches are rather thin. The records reflect that on January 11, 2001 he notified Dr. Binder that he gets headaches daily, "mostly while reading or watching television." AR at 399. Plaintiff also told Dr. Chang that he takes ibuprofen for headaches, but Dr. Chang told Plaintiff to avoid taking ibuprofen due to his gastrointestinal issues. AR at 326-27. Plaintiff testified at the hearing that he took ibuprofen for his headaches, and that a typical headache can last up to four hours. AR at 594-95. The ALJ properly found Plaintiff's headaches to be non-severe, as an ALJ may discredit a claimant's complaints based on his or her failure to seek treatment and/or conservative (*e.g.*, over the counter) treatment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further proceedings not inconsistent with this Report and Recommendation. In particular, the ALJ should reevaluate the medical evidence, give proper weight to the opinions of Dr. Coleman and Dr. Heilbrunn, and hear testimony from a VE concerning the full vocational impact of all of Plaintiff's impairments based on, among other things, a reassessment of Plaintiff's RFC. This testimony shall include answering a hypothetical that takes into account all of Plaintiff's limitations, including his cognitive and social limitations and his limitations on sitting and standing. With this information, the ALJ

should then apply all appropriate steps of the sequential evaluation process to determine whether Plaintiff's severe impairments render him disabled for purposes of Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f. A proposed order accompanies this Report and Recommendation.

DATED this 29th day of April, 2009.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge